UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------×
PATRICIA COBBS,

                 *Plaintiff*,

                 *v*.

COBB REALTY LLC *and* UP REALTY LLC,

                 *Defendants*.
-------------------------------------------------------------------------×

**16 CV 4912**

**FIRST AMENDED
COMPLAINT**

Plaintiff Patricia Cobbs, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants Cobb Realty LLC and Up Realty LLC as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Patricia Cobbs ("Plaintiff" or "Ms. Cobbs") seeks damages and costs against Defendant Cobb Realty LLC ("Cobb Realty") and Defendant Up Realty LLC ("Up Realty") (hereinafter collectively referred to as "Defendants") for failing to pay her at the overtime premium rate for hours worked in excess of forty (40) in a week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 1–1200.

2. Plaintiff also seeks damages and costs against Defendants for failing to pay her benefits and wage supplements, namely, reimbursements of agreed-to expenses, in violation of the NYLL §198-c.

3. Plaintiff also seeks damages and costs against Defendants for terminating her employment in retaliation for her complaints of overtime violations, in violation of the FLSA and NYLL.

4. Plaintiff also seeks damages and costs against Defendants for discriminating against her based on her sex by subjecting her to a hostile work environment and ultimately terminating her employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17.

5. Plaintiff also seeks damages and costs against Defendants for discriminating against her based on her gender and sexual orientation by subjecting her to a hostile work environment and ultimately terminating her employment, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131.

6. Plaintiff also seeks damages and costs against Defendants for terminating her employment in retaliation for her complaints of discrimination, in violation of Title VII and the NYCHRL.

**JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

7. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims arising under the FLSA and Title VII.

8. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims under the NYLL and NYCHRL, as the federal claims arise from the same set of operative facts as the state and local claims and form part of the same case or controversy.

9. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

10. All conditions precedent to maintain this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right-to-Sue Letter dated October 7, 2016, relating to the discriminatory acts

described in this Complaint. This action was properly instituted within ninety (90) days of receiving the Right-to-Sue Letter.

## TRIAL BY JURY

11. Plaintiff respectfully requests a trial before a jury.

## PARTIES

12. Plaintiff, at all times relevant hereto, was and is a resident of New York County in the State of New York.

13. Upon information and belief, at all times relevant hereto, Cobb Realty was and is a limited liability corporation organized under the laws of the State of New York with its principal place of business located at 619 Eastern Parkway, Brooklyn, New York 11213. Upon information and belief, Cobb Realty has an annual dollar volume of receipts greater than $500,000, and is therefore covered by the FLSA.

14. Upon information and belief, at all times relevant hereto, Up Realty was and is a limited liability corporation organized under the laws of the State of New York with its principal place of business located at 16 Fromer Street, Tannersville, New York 12485. Upon information and belief, Up Realty has an annual dollar volume of receipts greater than $500,000, and is therefore covered by the FLSA.

## STATEMENT OF FACTS

15. In or around January 2012, Ms. Cobbs was hired as a porter at a residential apartment complex located at 2245 Dix Avenue, Far Rockaway, NY 11601 (the "Property").

16. Ms. Cobbs' job responsibilities included performing various cleaning and maintenance tasks at the Property.

17. Throughout her employment, Ms. Cobbs was a reliable and dedicated employee who consistently performed her work well and was acknowledged for doing so in annual performance reviews. Ms. Cobbs never received any warnings, write-ups, discipline, or the like.

18. In or around January 2014, Cobb Realty purchased the Property, and Up Realty began to manage the Property. At this time, Ms. Cobbs became an employee of Defendants; she reported to supervisors at both Cobb Realty and Up Realty.

19. During her employment with Defendants, Ms. Cobbs was the only female porter at the Property.

20. Shortly after Defendants assumed the operations of the Property, they terminated a number of porters and other staff.

21. Ms. Cobbs was not terminated, as her job performance was at all times excellent.

22. Edmund Joseph became Ms. Cobbs' supervisor when Defendants assumed management of the Property.

**I.  Wage and Hour Claims**

23. Throughout Ms. Cobbs' employment with Defendants, Defendants did not track time worked by hourly employees; Defendants never required employees to punch in and out, fill out timesheets, or otherwise maintain records of their time worked.

24. Upon information and belief, security cameras captured the times that employees entered and left the Property.

25. Throughout Ms. Cobbs' employment with Defendants, she was scheduled to work from 8:00 a.m. to 4:00 p.m., Monday through Friday, at a pay rate of thirteen dollars ($13.00) per hour.

26. However, Defendants regularly required Ms. Cobbs to work outside of her scheduled hours.

27. Defendants required Ms. Cobbs to assume job responsibilities of various employees that Defendants had terminated. Consequently, Defendants frequently instructed Ms. Cobbs to arrive at work early or stay late due to the increased workload.

28. On every weekday of Ms. Cobbs' employment, from January 2014 to January 1, 2016, Defendants required her to arrive at work between 6:00 a.m. and 7:00 a.m. and leave work between 6:30 p.m. and 7:00 p.m.

29. Defendants also regularly required Ms. Cobbs to come in on the weekends.

30. Ms. Cobbs worked on Saturday and Sunday from approximately 7:00 a.m. to 3:00 p.m. on three (3) weekends each month for the duration of her employment with Defendants.

31. As a result, Ms. Cobbs worked between fifty-seven and one-half (57.5) hours and eighty-one (81) hours each week that she was employed with Defendants.

32. Defendants told Ms. Cobbs that she would receive overtime for her hours worked over forty (40) in a given work week.

33. However, Ms. Cobbs was never compensated for hours worked in excess of forty (40) in a work week at all, much less at the statutorily mandated overtime premium rate.

34. Throughout her employment, Ms. Cobbs complained to Mr. Joseph that Defendants had not paid her the overtime to which she was entitled.

35. Despite Ms. Cobbs' repeated inquiries and complaints, however, she was never paid at all for hours worked in excess of forty (40) in a work week.

5

36. In addition, Defendants and Ms. Cobbs had an agreement by which Defendants agreed to reimburse Ms. Cobbs for business expenses.

37. Defendants regularly instructed Ms. Cobbs to buy products for the Property, such as building and cleaning supplies.

38. Defendants told Ms. Cobbs that they would reimburse her for these expenses as soon as she submitted receipts for the purchases.

39. However, Ms. Cobbs was never reimbursed, despite submitting her receipts to Defendants in accordance with their instructions. Defendants have failed to pay the amount owed to Ms. Cobbs for reimbursement for over thirty (30) days after such payments were required to be made.

**II.   Gender and Sexual Orientation Discrimination Claims**

40. Ms. Cobbs is a lesbian. She was out to her coworkers at Defendants and regularly mentioned her female partner in conversation.

41. Mr. Joseph treated Ms. Cobbs less well than the male porters and created an extremely hostile work environment for Ms. Cobbs.

42. Mr. Joseph frequently made derogatory remarks based on Ms. Cobbs' gender and sexual orientation. He often made such remarks in front of Ms. Cobbs' coworkers as well as tenants of the Property. Ms. Cobbs was deeply offended by these comments.

43. For example, Mr. Joseph would often state that Ms. Cobbs "wanted to act like a man," and so he would "treat her like a man."

44. Mr. Joseph told Ms. Cobbs, "I don't like to see females doing a man's job."

45. Mr. Joseph told Ms. Cobbs that she should wear a skirt to work, rather than pants, as it was more feminine.

46. Mr. Joseph asked Ms. Cobbs inappropriate questions about her personal life, including repeatedly asking if she was married or if she had a boyfriend after Ms. Cobbs had informed him that she was a lesbian and had a girlfriend.

47. Mr. Joseph made Ms. Cobbs' job extremely difficult because of his prejudice against her gender and sexual orientation: he reprimanded her in front of other employees, increased her workload, and ridiculed her when she complained about the discriminatory treatment.

48. Ms. Cobbs repeatedly complained to the Property manager, David Marasow, about the sex- and sexual orientation–based hostility and discrimination she faced from Mr. Joseph, yet Defendants took no action to address the discrimination.

49. Defendants' inaction discouraged Ms. Cobbs from bringing further complaints to Mr. Marasow about Mr. Joseph's behavior.

50. In and around December 2015, Ms. Cobbs visited the City Councilman for the Property, Donovan Richards, Jr., and complained to him about sex- and sexual orientation–based discrimination.

51. Councilman Richards indicated that he would address Ms. Cobbs' complaints with Defendants.

52. In and around December 2015, Ms. Cobbs filed a complaint with the New York State Division of Human Rights ("NYSDHR") regarding Defendants' discrimination against her based on her gender and sexual orientation.[1]

53. Shortly thereafter, on or about January 1, 2016, Defendants terminated Ms. Cobbs' employment.

54. When Ms. Cobbs requested an explanation for the termination, she was told only, "New year, new things."

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Unpaid Overtime in Violation of the FLSA**

55. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA.

57. The FLSA mandates that employers must compensate employees at one-and-a-half (1.5) times their normal hourly rate for all hours worked over forty (40) hours each week.

58. Plaintiff regularly worked in excess of forty (40) hours per week, but was never compensated for hours worked in excess of forty (40) at all, much less at the overtime premium rate.

59. Plaintiff repeatedly complained to Defendants about their failure to pay her the overtime to which she was entitled; as such, Defendants were aware of their obligation to compensate Plaintiff for hours worked in excess of forty (40) at the overtime premium rate.

---

[1] Ms. Cobbs since withdrew her NYSDHR proceeding in order to file the instant action.

8

60. Defendants willfully and intentionally violated the FLSA's overtime requirement by not paying Plaintiff at the overtime premium rate for any overtime worked.

61. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants her unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs related to the action.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of the FLSA

62. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 61 with the same force as though separately alleged herein.

63. The FLSA prohibits retaliation by an employer against an employee for complaining of employment practices illegal under the FLSA.

64. Plaintiff properly complained about Defendants' failure to compensate her for hours worked in excess of forty (40) in a work week.

65. Defendants retaliated against Plaintiff by, among other things, terminating her employment.

66. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continue to suffer, substantial economic damages.

67. Due to Defendants' retaliation, Plaintiff is entitled to recover from Defendants back pay, front pay, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

## THIRD CAUSE OF ACTION
### Unpaid Overtime in Violation of the NYLL

68. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the NYLL.

70. The NYLL mandates that employers compensate employees at one-and-a-half (1.5) times their normal hourly rate for all hours worked in excess of forty (40) in a work week.

71. Plaintiff regularly worked in excess of forty (40) hours per week, but was never compensated for hours worked in excess of forty (40) at all, much less at the overtime premium rate.

72. Plaintiff repeatedly complained to Defendants about their failure to pay her the overtime to which she was entitled; as such, Defendants were aware of their obligation to compensate Plaintiff for hours worked in excess of forty (40) at the overtime premium rate.

73. Defendants willfully and intentionally violated the NYLL's overtime requirement by not paying Plaintiff at the overtime premium rate for any overtime worked.

74. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants her unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees and costs related to the action.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the NYLL

75. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 74 with the same force as though separately alleged herein.

76. The NYLL prohibits retaliation by an employer against an employee for complaining of employment practices illegal within the NYLL.

77. Plaintiff properly complained about Defendants' failure to compensate her for hours worked in excess of forty (40) in a work week.

78. Defendants retaliated against Plaintiff by, among other things, terminating her employment.

79. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

80. Due to Defendants' retaliation, Plaintiff is entitled to recover from Defendants back pay, front pay, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

**FIFTH CAUSE OF ACTION**
**Failure to Pay Benefits or Wage Supplements in Violation of the NYLL**

81. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 80 with the same force as though separately alleged herein.

82. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the NYLL.

83. NYLL §198c mandates that employers abide by the terms of agreements they make with employees regarding benefits or wage supplements, including reimbursements for job-related expenses.

84. Plaintiff was not exempt under the NYLL; she did not perform exempt duties or earn more than nine hundred dollars ($900) per week.

85. Defendants agreed to reimburse Plaintiff for job-related expenses.

86. However, Defendants failed to abide by the terms of their agreement with Plaintiff.

87. Defendants willfully and intentionally violated the NYLL's requirement regarding benefits and wage supplements.

88. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants her unpaid reimbursements, liquidated damages, interest, reasonable attorneys' fees and costs related to the action.

## SIXTH CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII

89. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 88 with the same force as though separately alleged herein.

90. Title VII prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of sex.

91. Defendants created a hostile work environment for Plaintiff based on her sex by subjecting her to offensive comments and treating her less well than her male coworkers.

92. As a direct and proximate consequence of Defendants' sex discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

93. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SEVENTH CAUSE OF ACTION
### Wrongful Termination in Violation of Title VII

94. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 93 with the same force as though separately alleged herein

95. Title VII prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of sex.

96. Defendants ultimately terminated Plaintiff's employment in part because of her sex.

97. As a direct and proximate consequence of Defendants' sex discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

98. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of Title VII**

99. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 98 with the same force as though separately alleged herein.

100. Title VII prohibits employers from retaliating against any employee for making a complaint of discriminatory practices made illegal under Title VII.

101. Plaintiff properly complained to Defendants' management, the City Council, and the NYSDHR about Defendants' discriminatory conduct.

102. Defendants retaliated against Plaintiff by, among other things, ultimately terminating her employment.

103. As a direct and proximate consequence of Defendants' unlawful retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

## NINTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

104.   Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 103 with the same force as though separately alleged herein.

105.   The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of gender or sexual orientation.

106.   Defendants created a hostile work environment for Plaintiff based on her gender and sexual orientation by subjecting her to offensive comments and treating her less well than her straight male coworkers.

107.   As a direct and proximate consequence of Defendants' gender and sexual orientation discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

108.   Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## TENTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

109.   Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 108 with the same force as though separately alleged herein

110.   The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of gender or sexual orientation.

111. Defendants ultimately terminated Plaintiff's employment in part because of her gender and sexual orientation.

112. As a direct and proximate consequence of Defendants' gender and sexual orientation discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

113. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### ELEVENTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

114. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 113 with the same force as though separately alleged herein.

115. The NYCHRL prohibits employers from retaliating against any employee for making a complaint of gender and/or sexual orientation discrimination.

116. Plaintiff properly complained to Defendants' management, the City Council, and the NYSDHR about Defendants' discriminatory conduct.

117. Defendants retaliated against Plaintiff by, among other things, ultimately terminating her employment.

118. As a direct and proximate consequence of Defendants' unlawful retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

119.    Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**REQUEST FOR RELIEF**

    **WHEREFORE**, Plaintiff respectfully requests the following relief:

    A. For the first claim, damages to be determined at trial;

    B. For the second claim, damages to be determined at trial;

    C. For the third claim, damages to be determined at trial;

    D. For the fourth claim, damages to be determined at trial;

    E. For the fifth claim, damages to be determined at trial;

    F. For the sixth claim, damages to be determined at trial;

    G. For the seventh claim, damages to be determined at trial;

    H. For the eighth claim, damages to be determined at trial;

    I. For the ninth claim, damages to be determined at trial;

    J. For the tenth claim, damages to be determined at trial;

    K. For the eleventh claim, damages to be determined at trial;

    L. An award of compensatory, assumed, and punitive damages;

    M. Pre-judgment and post-judgment interest;

    N. Attorneys' fees and costs; and

    O. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       October 25, 2016

By: _/s/ Walker G. Harman, Jr._

Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*